Louis Klugman, Appellee, v. Sanitary Laundry Company, Appellant.

## Gen. No. 14,969.

VERDICTS—*when set aside as against the evidence.* If the evidence does not justify on the facts the verdict as rendered, it will be set aside on review.

Action on the case. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1909. Reversed. Opinion filed March 1, 1910. Rehearing denied March 17, 1910.

CLARK VARNUM and SEARS, ROOS & BOEGER, for appellant.

MARK J. SULLIVAN, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the defendant from a judgment for $1,200 recovered by the plaintiff in an action

on the case for the loss of the services and society of his wife through and as the result of injuries alleged to have been wrongfully inflicted on her by the defendant by its agent or servant. The contention of appellant that the declaration does not state a cause of action because the averment that the wrongful act complained of was committed by the servant of defendant, "in the scope of his employment," is but the statement of a conclusion of the pleader, is without merit. The averment of the amended declaration is that the defendant by its servant, "in the scope of his employment" committed the wrongful act. If the words, "in the scope of his employment," be disregarded, the count avers that the defendant by its servant committed the wrongful act, and this is sufficient. 2 Chitty Pleadings, 708 note n.

From the evidence the jury might properly find that McCrea, who, according to the contention of plaintiff committed the wrongful act, was at the time the act is alleged to have been committed in the service of the defendant, and that if the wrongful act alleged to have been committed by McCrea was in fact committed by him, it was committed under such circumstances as to make it the act of the defendant.

The wrongful act alleged in the declaration was that defendant by McCrea, its servant, wrongfully, etc., assaulted plaintiff's wife and struck and injured her, etc., by means whereof, etc. The decision in the case therefore turns on the question whether from the evidence the jury might properly find that McCrea wrongfully struck, or otherwise wrongfully injured plaintiff's wife, as alleged in the declaration. The defendant offered no evidence. The plaintiff called four witnesses—McCrea, who it is alleged committed the wrongful act complained of, Mrs. Gershuny, Mrs. Ross and Dr. Blech. Neither Mrs. Ross nor Dr. Blech was present when it is alleged the wrongful act was committed. Much of the testimony of McCrea stands un-

contradicted either by positive testimony or by any proven act or circumstance. From his uncontradicted testimony and other uncontradicted testimony it appears that the day before the assault is alleged to have been committed, McCrea, for the defendant, delivered a bundle to plaintiff's wife and collected the charges thereon. The next day he was given by defendant a package of collars to deliver to her on which he was directed to collect charges amounting to twelve cents. Plaintiff then lived with his family in the front part of the third floor of a flat or apartment building in Chicago. McCrea went to the door of plaintiff's apartment and his wife came to the door. He presented the package and asked her for the amount of the charges thereon. She insisted that she had paid for the collars the day before, and he told her that there were charges on the package and that he would have to take it back to the laundry and get instructions before he could leave it without collecting the charges. He held the package in his hand and plaintiff's wife caught hold of it and he held onto it, and finally the wrapping was broken, the collars fell on the floor and McCrea then went away.

McCrea further testified that he did not either strike or push Mrs. Klugman. Asked by plaintiff's counsel if there was not some scuffle, he answered that there was. Mrs. Gershuny testified that she lived on the same floor the plaintiff lived on; that she was in the hall and saw the laundryman standing in the door leading to plaintiff's kitchen; that she heard some quarreling about money; that she went back to her own kitchen; that she heard a scream and ran to plaintiff's kitchen door; that she saw the laundryman "over to the door, he wanted to go out at the same time he pushed Mrs. Klugman towards the table and ran out at the same time;" that Mrs. Ross then came and they put Mrs. Klugman to bed, and the witness then went for a doctor and when she came back she saw that Mrs.

Klugman's clothing and everything she was lying in, "was in blood." On cross-examination she again stated that when she heard the scream and ran to plaintiff's room, that she saw the laundryman push Mrs. Klugman towards the table and run out; that he pushed her against the table; that her back was towards the table.

"Q. When he pushed her towards the table she struck her back against the table?

A. Yes, sir."

The witness admitted on the cross-examination that she was a witness on the trial of a suit brought by Mrs. Klugman against defendant, growing out of the same occurrence, and was then asked by plaintiff's counsel to tell in her own way all that she knew about the case; that her answer was that when she heard Mrs. Klugman screaming she ran out from her rooms; "and I saw her laundryman running from her house, and I ran in her house and saw Mrs. Klugman bending down on her table, and she felt terrible bad and pale." Doctor Blech testified that he saw plaintiff a few hours after the occurrence; that she was then five or six months advanced in pregnancy; that he saw black and blue spots on her abdomen, "evidently due to some sort of a blunt injury." Mrs. Ross testified that as she went up stairs she saw the laundryman going down, and only testified as to Mrs. Klugman's condition after witness reached her apartments. The evidence further tended to show that Mrs. Klugman was ill and in bed for several months after the occurrence; that at the end of five or six weeks she had a miscarriage, and several months later had an operation for injuries to her womb.

Mrs. Klugman had no right to take the collars from McCrea by force, and if she attempted to do so, he might lawfully hold onto them to prevent her taking them from him, and if in an effort to take the collars from him by force she was injured, plaintiff would

have no right of action against defendant for the consequences of such injury.

McCrea was called as a witness by the plaintiff, and examined by him as to the entire occurrence. His testimony is in direct conflict with the testimony of Mrs. Gershuny. On the trial of a suit growing out of the same occurrence Mrs. Gershuny, although asked to state all that occurred, did not testify that she saw McCrea push Mrs. Klugman against or towards a table.

In the opinion of the majority of the court, not in cluding the writer of this opinion, the jury might not from the evidence properly find that McCrea pushed Mrs. Klugman against the table, or that he pushed her at all, or that he struck her, or was guilty of any wrongful act or conduct towards her and therefore might not properly find the defendant guilty of the wrongful acts and conduct towards Mrs. Klugman alleged in the declaration.

The judgment of the Superior Court will therefore be reversed.

*Reversed.*